## BROWN v. GLATHARY.

By the law of Kentucky where, under an absolute bill of sale of a slave, possession remains in the vendor, such possession is not merely *primâ facie* evidence of fraud, but renders the sale fraudulent *per se*, and inoperative against creditors of the vendor who had no notice at the time of trusting the seller. But when possession is taken by the vendee before third persons have acquired any rights, the fact of the anterior continued possession would not be regarded as any thing more than a suspicious circumstance, to be considered in appreciating the subsequent conduct of the parties. And, supposing the sale to have been real and in good faith, where the vendee, some time after the sale, takes possession of the property and holds it for several months, the reacquisition of possession by the vendor under a lease would not subject the property, in Kentucky, to the pursuit of creditors of the vendor who became such after the lease; nor would the purchaser lose his rights, as against the creditors of the lessee, by permitting the lessee to bring the property into this State, although the possession and declaration of the lessee, that he was owner, may have induced them to trust him.

APPEAL from the District Court of Carroll, *Selby*, J. *Dupuy*, for the plaintiff. *Short* and *Thomas*, for the appellant. The judgment of the court was pronounced by

SLIDELL, J. In 1838, *William Craig* married, in Kentucky, *Eliza Brown*, the sister of the plaintiff; and became, according to the law of that State, the owner of a slave called *Fanny*, then belonging to his wife. In 1842, *Craig* sold the slave and her child *Ellen* to the plaintiff, by a written bill of sale, acknowledging the receipt of the price, $450. The execution of this instrument, and the payment of the money at the time, is proved by the subscribing witness.

In the latter part of 1846, *Brown* hired to *Craig*, *Fanny*, and her two children born after the purchase. *Craig* was then going to Louisiana to do certain work as a carpenter, and took the slave *Fanny* with him as a cook, it being understood that he should bring her back on his return. The child, *Ellen*, remained with the plaintiff.

*Craig*, on his arrival in Louisiana, in 1847, held himself out as the owner of *Fanny* and her children. He fell in debt here to the person with whom he had contracted to build a house and to other persons. He also, on his departure in the summer of 1847, hired the slaves to *Glathary*. The Louisiana creditors brought suit against him by attachment, and seized the slaves. They were also seized on *fieri facias*. and sold to *Glathary* by the sheriff.

There is no doubt, under the evidence, of the execution of the bill of sale and the payment of the money; but the difficulty arises from the fact of the continued possession of *Craig*, the vendor. It is not shown that the slaves were actually delivered at the time of the sale. It is proved that they were in *Craig's* possession down to 1845. The plaintiff alleges that in was under a contract of hire, but this is not satisfactorily proved. It appears, however, that *Brown* was in possession of them in 1845, and held possession eight or nine months, when they were hired by *Brown* to *Craig* as above stated, and brought by him to Louisiana.

From the evidence offered at the trial it would seem that, according to the existing jurisprudence in Kentucky, the doctrine is more stern than formerly prevailed there; and that when, under an absolute bill of sale, possession remains in the vendor, such possession is not merely *primâ facie* evidence of fraud, but so contaminates the transaction that it is deemed fraudulent *per se*, and inoperative against creditors of the vendor who had no notice at the time they trusted the seller.

If the doctrine, however, be conceded in the fullest extent to which the testimony carries it, it seems to us not to cover a case where the creditor trusts after the possession is changed. The policy of the law is to protect third persons from being deceived and injured by the false aspect in which the vendor is permitted to present himself before the public. When the possession is taken by the vendee before the rights of third persons intervene, the fact of the anterior continued possession would not be regarded at most as more than a suspicious circumstance, to be considered in appreciating the subsequent conduct of the parties.

Having taken possession of the property in 1845, and continued in possession for several months, the reacquisition of possession by *Craig* under a lease would not have subjected the property in Kentucky to the pursuit of his creditors, who became such after the execution of the lease, always supposing that the sale was real and in good faith.

If such would have been the rights of the plaintiff in Kentucky, has he lost them by permitting the lessee to bring the property into this State? We think not; for our law permits slaves to be leased, and the proprietor would not lose his rights in favor of the lessee's creditors, although the lessee's possession and his declarations might have induced them to trust him.

We have considered this case upon the assumption that the sale by *Craig* to *Brown* was real and fair. This was the conviction of the district judge, and, under the testimony adduced by the plaintiff, we cannot say it was unauthorized. We have said that it is not satisfactorily proved that *Craig* hired the slaves immediately after the sale in 1842. The testimony on that point is at

best vague; but even without a hiring, the near relationship existing between *Brown* and *Craig's* wife, who once owned them, was a circumstance which may, in connection with the other evidence, have relieved the case in the opinion of the district judge from suspicion on that score. We cannot reverse his opinion without discrediting two witnesses whom he believed, and whose testimony was not impeached at the trial.

*Judgment affirmed.*